OPINION
{¶ 1} Defendant-Appellant Terry Shaw appeals from his conviction and sentence on three counts of Rape and two counts of Sexual Battery. He presents seven assignments of error on appeal. Shaw contends that the trial court's decision to allow into evidence testimony of unindicted other bad acts prevented him from receiving a fair *Page 2 
trial, particularly because the evidence was not accompanied by a limiting instruction. He further contends that because there were no distinctions among the fifteen Rape charges and the ten Sexual Battery charges, contained therein, the indictment was not specific enough to give him adequate notice of the charges against him in order to allow him to adequately defend himself. Shaw also argues that his convictions are against the manifest weight of the evidence and are not supported by sufficient evidence. He maintains that he was denied the effective assistance of counsel and that due to cumulative error, he was denied a fair trial. Shaw also challenges his sentence.
 {¶ 2} We agree that the pervasive nature of the testimony regarding other bad acts that the trial court allowed into evidence, with no limiting instruction, prejudiced Shaw's right to a fair trial, requiring his conviction and sentence to be reversed. While the indictment was sufficient, the lack of differentiation of which facts applied to which charges precludes retrial for any offenses against the same three victims that occurred during the time spans covered by the indictment, since it would not be possible, on retrial, to determine which of the charges against Shaw, for which he was tried, resulted in acquittals. Despite these errors, we find that the State did present sufficient evidence to warrant presenting the case to a jury. Shaw's remaining contentions are rendered moot by our disposition of his first two assignments of error. Accordingly, the judgment of the trial court is Reversed, and Shaw is Discharged with respect to the offenses with which this appeal is concerned.
 I {¶ 3} In December, 2005 a Montgomery County Grand Jury issued an indictment against Shaw charging fifteen counts of Rape of a Child Under the Age of *Page 3 
Thirteen and ten counts of Sexual Battery. All counts charge offenses against three of Shaw's minor daughters.
 {¶ 4} At trial, Shaw's three older daughters, nineteen-year-old JX, fifteen-year-old JN, and thirteen-year-old JL, testified about years of sexual abuse that they endured at the hands of their father. The girls described the escalation of abuse that began with inappropriate touching when each girl was about ten years old and progressed rapidly to oral sex and digital penetration and then to vaginal intercourse.
 {¶ 5} Shaw testified, denying that he ever touched any of his own children or any other child in a sexual manner. He also presented testimony regarding the family's schedules, the presence of two live-in girlfriends, and his children's anger at him regarding an incident of discipline the night before JX and JL first revealed the abuse, to cast doubt on the veracity of the claims of his daughters.
 {¶ 6} The jury found Shaw guilty of three counts of Rape, one count for each daughter, and two counts of Sexual Battery, representing one count for each of the two older girls. However, the jury found him not guilty of the remaining twelve counts of Rape and eight counts of Sexual Battery. The trial court sentenced Shaw to consecutive sentences totaling forty years in prison. He appeals.
 II {¶ 7} Shaw's Second Assignment of Error is as follows:
 {¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. SHAW WHEN IT ALLOWED THE STATE TO ELICIT TESTIMONY OF OTHER UNINDICTED `BAD ACTS' IN ITS EFFORT TO OBTAIN CONVICTION, DENYING MR. SHAW HIS *Page 4 
FEDERAL AND OHIO CONSTITUTIONAL RIGHT TO A FAIR TRIAL."
 {¶ 9} In his Second Assignment of Error, Shaw maintains that he was denied a fair trial because, over repeated objections, the trial court allowed into evidence a lot of testimony regarding other bad acts for which he had not been indicted and because the trial court failed to give the jury a limiting instruction regarding that evidence. The decision whether to admit evidence is left to the sound discretion of the trial court, and a reviewing court will not override that decision absent an abuse of discretion. State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160, ¶¶ 129-30, citations omitted. An abuse of discretion implies an unreasonable, arbitrary or unconscionable attitude by the court. Id. We agree that the trial court abused its discretion in admitting the extensive amount of "other acts" testimony, particularly since the court gave no limiting instruction regarding that evidence.
 {¶ 10} Because Evid.R. 404(B) establishes an exception to the common law with respect to evidence of other acts of wrongdoing, it must be strictly construed against admissibility. State v. Sinclair, Greene App. No. 2002-CA-33, 2003-Ohio-3246,]}32, citing State v. Broom (1988),40 Ohio St.3d 277, 282, 533 N.E.2d 682. Furthermore, while the rule creates an exception for the admissibility of "other acts" evidence when it is probative of a particular matter, that matter must genuinely be at issue. Id., citing State v. Smith (1992), 84 Ohio App.3d 647,617 N.E.2d 1160.
 {¶ 11} At trial the State elicited extensive testimony from the three girls that they had endured ongoing sexual abuse by their father. Over the years the abuse of each girl was said to have occurred multiple times each week. While each of the girls testified to several specific instances of abuse, each also repeatedly testified, over ongoing *Page 5 
objections, that the abuse had happened many other times.
 {¶ 12} The State argues on appeal that this testimony was admissible under Evid.R. 404(B) to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident and that this testimony was necessary to put the case into context for the jury. Rather than just hearing about the twenty-five incidents of abuse on which Shaw was indicted, the general testimony of the ongoing nature of the abuse explained why the girls tolerated the abuse, which for them had become part of their everyday lives. However, at trial the prosecutor merely stated that she needed to talk to the witnesses "about what happened during these times so I can move on to what the next incident will be. There are so many incidents." This cursory explanation fails to establish any of the exceptions under Evid.R. 404(B). While there is reference to an earlier discussion of this issue in chambers, the content of that discussion is not in the record.
 {¶ 13} "The courts in Ohio have long recognized that evidence of other crimes, wrongs or bad acts carries the potential for the most virulent kind of prejudice for the accused. State v. Lewis (Feb. 1, 1990), Greene App. No. 88-CA-91. That is even more true in a case such as this where the other acts involve conduct similar or identical to the offense charged. In cases where evidence has been admitted for a very limited purpose and that evidence tends to show that Defendant has committed other criminal acts, the jury should be instructed that such evidence must not be considered by them as proof that defendant committed the crime charged. Id; State v. Flonnory (1972), 31 Ohio St.2d 124,285 N.E.2d 726. The limiting instruction should be given at the time the `other acts' evidence is received, Lewis, supra, and it has been held that the failure to *Page 6 
give any limiting instruction constitutes plain error. State v.Crafton (1968), 15 Ohio App.2d 260, 239 N.E.2d 571." State v.Tisdale, Montgomery App. No. 19346, 2003-Ohio-4209,]}47. See, alsoState v. Baxter (1914), 91 Ohio St. 167, 239 N.E.2d 571, syllabus.
 {¶ 14} We find no justification for the extensive amount of "other acts" testimony presented in this case. Even if some minimal reference to the pattern of abuse as part of the fabric of the victims' lives was more relevant than prejudicial, the pervasive nature of the testimony precluded Shaw's right to a fair trial. It is also significant that the trial court gave no limiting instruction regarding the "other acts" testimony, either at the time the testimony was offered or in the jury instructions at the close of the trial.
 {¶ 15} Given the State's failure to articulate a proper justification for the "other acts" evidence in this case, compounded by the extensive amount of this testimony and the trial court's failure to give a limiting instruction regarding that evidence, we find that Shaw's right to a fair trial was prejudiced. Accordingly, Shaw's Second Assignment of Error is sustained.
 III {¶ 16} Shaw's First Assignment of Error is as follows:
 {¶ 17} "MR. SHAW WAS DENIED HIS FEDERAL AND STATE DUE PROCESS RIGHTS TO NOTICE AS THE OFFENSES WERE NOT CHARGED WITH SUFFICIENT SPECIFICITY."
 {¶ 18} In his First Assignment of Error, Shaw argues that because there were no distinctions among the numerous charges for which he was indicted, he was denied his *Page 7 
constitutional right to notice of the nature and cause of the charges brought against him. Additionally, he insists that these deficiencies were not cured by the bill of particulars or other discovery. In a case like this one, where the defendant is acquitted of some of the charges, and his convictions on the other charges are reversed, the serious problem arises of connecting each criminal count with a distinguishable set of facts. We conclude that while Shaw's indictment was sufficient in that it tracked the language of the statutes, the lack of any differentiation of which facts apply to which charges precludes retrial for any offenses against the same three victims that occurred during the expansive time span covered by the indictment.
 {¶ 19} An indictment is constitutionally adequate if it first "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second enables him to plead an acquittal or conviction in bar of future prosecution for the same offense." Hamling v. United States (1974), 418 U.S. 87, 117, 94 S.Ct. 2887. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as `those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" Id., quoting United States v.Carll (1881), 105 U.S.611, 612. See, also, State v. Childs (2000),88 Ohio St.3d 194, 198, 724 N.E.2d 781.
 {¶ 20} The indictment in this case was sufficient because it paralleled the language of the statutes, including every element of each charge. Because the nature of the sexual acts had no bearing on the identity or severity of the offenses, the specific acts were not essential elements of the crimes and therefore were not required to be set *Page 8 
forth in the indictment. See, e.g., State v. Plymale, Portage App. No. 99-P-0012, 2001-Ohio-8892. See, also, Hale v. State (1898),58 Ohio St. 676, 51 N.E. 154, paragraph one of the syllabus. ("When an offense against a criminal statute may, in the same transaction, be committed in one or more of several ways as therein provided, the indictment may, in a single count, charge its commission in any or all of the ways specified, if they are not repugnant.")
 {¶ 21} The only difference in the language of the indictment regarding each of the fifteen counts of Rape and each of the ten counts of Sexual Battery was some variation in dates. In addition to complying with the local rules of discovery providing extensive information, including police reports, the State also filed a bill of particulars wherein the State identified which counts applied to which child and which general acts were encompassed within each group of charges. For example, "The victim in Counts 1, 2, 3, 4, and 5 is [JX]. The sexual conduct includes, but is not limited to, oral sex and vaginal intercourse." However, there was no way for Shaw to know which particular facts applied to which charge. This deficiency was never rectified during the trial, by jury instructions, or on the verdict forms.
 {¶ 22} The confusion regarding matching events with charges is illustrated by the jury's request early during their deliberations for "[clarification on difference between each of the counts." The court merely responded by telling the jury that it already had all of the evidence and law that it needed. In other cases confusion has been avoided by the trial court's use of jury instructions and verdict forms wherein the court identifies charges by using brief labels indicating location or some other identifying fact. See, e.g., State v.Russell, Cuyahoga App. No. 88008, 2007-Ohio-2108; Valentine v.Koneth *Page 9 
(2005), 395 F.3d 626, 634, 637-38, citations omitted.
 {¶ 23} In this case the court did not differentiate the charges, instead instructing the jury as follows: "You must consider each count and the evidence applicable to each count separately, and you must state your finding as to each count uninfluenced by your verdict as to any other count." When the indictment covered extensive spans of up to five years, and each girl testified to multiple incidents of abuse, the jury needed guidance as to which facts the State was alleging to apply to which charges.
 {¶ 24} While the indictment itself was sufficient, there was never any differentiation of which specific events applied to each charge either before or during trial. Such clarification is necessary for the jury and for the defendant to be able to ensure that he is not indicted on the same incidents at some point in the future. "The Constitution does . . . demand that if a defendant is going to be charged with multiple counts of the same crime, there must be some minimal differentiation between the counts at some point in the proceeding." Valentine, supra, at 638. Moreover, in a case like this one, where Shaw was acquitted of most of the charges against him, clarification is necessary in order to know what evidence may be presented at a retrial. See, e.g., Id., at 634-36.
 {¶ 25} As the State acknowledged at oral argument would be the case in the event of a reversal, because there is no way to know upon which of the charges Shaw was convicted and upon which of the charges he was acquitted, the Double Jeopardy clause of the Fifth Amendment to the United States Constitution precludes retrial for any offenses against the same three victims that occurred during the extensive time span covered by the indictment. It would not be possible, upon a retrial, to eliminate the *Page 10 
possibility that Shaw was being tried for an offense of which he was acquitted. This problem does not preclude Shaw from being indicted for crimes that he may have committed outside of the time frame set forth in the indictment with which this appeal is concerned, or for crimes against other victims. Albeit for different reasons than Shaw argues, his First Assignment of Error is sustained.
 IV {¶ 26} Shaw's Third Assignment of Error states as follows:
 {¶ 27} "THE TRIAL COURT ERRED IN FAILING TO GRANT MR. SHAW'S MOTION FOR JUDGMENT OF ACQUITTAL ON ALL CHARGES, AS THE EVIDENCE PRESENTED WAS NOT LEGALLY SUFFICIENT TO SUPPORT A CONVICTION."
 {¶ 28} In his Third Assignment of Error, Shaw contends that his convictions are not supported by sufficient evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond *Page 11 
a reasonable doubt." Because the State presented sufficient evidence of each element of each offense to warrant presenting the case to the jury for deliberation, Shaw's Third Assignment of Error is overruled.
 V {¶ 29} Shaw's Fourth, Fifth, Sixth and Seventh assignments of error are as follows:
 {¶ 30} "MR. SHAW WAS DENIED HIS CONSTITUTIONAL RIGHT AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO PROTECT MR. SHAW'S RIGHTS AT TRIAL WHEN MR. SHAW'S TRIAL COUNSEL FAILED TO TIMELY OBJECT TO LEADING QUESTIONS POSED TO THE STATE'S WITNESSES BY THE PROSECUTOR, FAILED TO OBJECT TO THE INTRODUCTION OF HEARSAY TESTIMONY, AND FAILED TO OBJECT TO BOLSTERING TESTIMONY OF THE STATE'S WITNESSES.
 {¶ 31} "MR. SHAW'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 32} "THE TRIAL COURT ERRED TO THE DETRIMENT OF MR. SHAW WHEN IT IMPOSED SENTENCE UPON HIM WITHOUT ANY REVIEW OR CONSIDERATION OF R.C.2929.11 AND 2929.12.
 {¶ 33} "THE CUMULATIVE EFFECT OF THE ERRORS COMMITTED BY THE TRIAL COURT AND BY MR. SHAW'S TRIAL COUNSEL COMBINED TO DENY MR. SHAW DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE *Page 12 
UNITED STATES AND OHIO CONSTITUTIONS."
 {¶ 34} We need not address these issues as they have been rendered moot by our disposition of the first two assignments of error.
 VI {¶ 35} Shaw's first two assignments of error are sustained, his Third Assignment of Error is overruled, and his remaining assignments of error are moot. The judgment of the trial court is Reversed and Shaw is ordered Discharged with respect to the charges with which this appeal is concerned.
 WOLFF, P.J., and DONOVAN, J., concur. *Page 1